**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| JOHN MIXON, | : | Case No. 3:12-cv-277 |
| Plaintiff, | : | District Judge Thomas M. Rose<br>Magistrate Judge Michael J. Newman |
| vs. | : | |
| COMMISSIONER OF<br>SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB"). This case is before the Court upon Plaintiff's Statement of Specific Errors (doc. 8), the Commissioner's Memorandum in Opposition (doc. 10), Plaintiff's Reply (doc. 11), the administrative record[2] (doc. 6), and the record as a whole.

## I.  BACKGROUND

### A.  Procedural History

This case involves Plaintiff's second application for disability benefits. Plaintiff initially filed for DIB in February 2003, alleging a disability onset date of September 1, 2000. PageID 121. After initial denials of his application, Plaintiff received a hearing before ALJ George

---

[1]Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2]Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

Spidel.  PageID 128.  In a written decision issued on November 2, 2004, ALJ Spidel found Plaintiff not "disabled," *see* PageID 121-28, on the basis that Plaintiff retained the residual functional capacity ("RFC") to perform light work[3] with the following restrictions:

> He should not be expected to lift more than a maximum of 15 pounds.  He should be permitted to alternate between sitting and standing as needed.  The claimant can stoop occasionally.  The claimant should not be expected to lift overhead in the performance of job duties.  He should not be expected to lift from the floor. The claimant should not be expected to make repetitive use of his hands.  He should not be expected to perform tasks that involve fine bilateral dexterity.  The claimant is restricted to performing essentially unskilled entry-level simple tasks (20 CFR § 404.1545).

PageID 127.  There is no evidence that Plaintiff appealed ALJ Spidel's decision.

On January 10, 2008, Plaintiff filed a new application for DIB,[4] alleging an onset date of January 1, 2005, and claiming disability due to a "bad back"; carpal tunnel syndrome; arthritis; a "bad heart"; Dupuytren's contracture of his left hand; bone fragments in his right ankle; a broken left arm below the shoulder joint and fractured shoulder bones in April 2005; and triple bypass surgery on January 23, 2006.  PageID 182-88, 209.  It is this application which is the subject of the instant case.

After initial denials, Plaintiff received a hearing before ALJ Thomas McNichols, II.  *Id*. In a written decision issued on August 25, 2010, ALJ McNichols found Plaintiff not "disabled." *See* PageID 62-72.  Specifically, ALJ McNichols' "Findings," which represent the rationale of his decision, were as follows:

---

[3]The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements.  20 C.F.R. § 416.967.  Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

[4]The record also contains an application for Supplemental Security Income, *see* PageID 179-81, but there is no indication why the application was denied, and Plaintiff does not challenge the denial of SSI benefits as part of this case.

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2006;

2. The claimant did not engage in substantial gainful activity during the period from his alleged disability onset date of January 1, 2005, through his date last insured of March 31, 2006 (20 CFR §§ 404.1571 *et seq*);

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine aggravated by obesity, Dupuytren's contracture of the left hand and moderate bilateral carpal tunnel syndrome, and coronary artery disease with residuals of three-vessel coronary artery bypass grafting in January of 2006 (20 CFR § 404.1520(c));

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525 and 404.1526);

5. After careful consideration of the entire record, the [ALJ] finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b) except that he could not climb ladders, ropes, or scaffolds, perform work above shoulder level, perform tasks requiring bilateral fine dexterity or repetitive use of the hands, lift more than 15 pounds, perform any lifting from floor level, or tolerate exposure to hazards or extremes or hot, cold, or humidity or perform more than occasional stooping, and he required the opportunity to alternate position between sitting and standing as needed;

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR § 404.1565);

7. The claimant was born [in]...1953, and was 52 years old, which is defined as an individual "closely approaching advanced age" on the date last insured (20 CFR § 404.1563);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR § 404.1564);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not he has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

    10.    Through the dated last insured, considering his age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR §§ 404.1569 and 404.1569(a)); [and]

    11.    The claimant has not been under a disability, as defined in the Social Security Act, at any time from January 1, 2005, the alleged onset date, through March 31, 2006, the date last insured (20 CFR § 404.1520(g)).

PageID 64-72.

Thereafter, the Appeals Council denied Plaintiff's request for review, making ALJ McNichols' non-disability finding the final administrative decision of the Commissioner. PageID 53-57. *See Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this timely appeal on August 21, 2012. Doc. 2.

    **B. Plaintiff's Hearing Testimony**

At the administrative hearing before ALJ McNichols, Plaintiff testified that he was 56 years old, stood 5'6" tall, and weighed 205 pounds. PageID 84. He stated that he lives with his wife, has a driver's license, and drives once or twice per week. PageID 85-86. He testified that he does not drive more frequently due to the side effects from his pain medication. *Id.* He stated that he stopped working in September 2002 when his union went on strike, and his employer replaced the entire workforce. PageID 87. He has not attempted to work since then. *Id.*

Plaintiff further testified that, he has a heart condition, and experiences chest pains as well as shortness of breath "off and on" throughout the week. PageID 87-88. He takes nitroglycerin and a number of other medications for his heart condition. PageID 88.
Plaintiff also testified to experiencing constant arthritic pain in his back and hands. PageID 89, 94.

Plaintiff testified that on a typical day, he is able to use his hands "most of the time." PageID 89. He acknowledged that he can typically use his hands to button and zip his clothing.

PageID 90. Plaintiff also testified that his fingers lock in place at times, and he must bend them manually. *Id.* Plaintiff stated that he has mashed his thumbs "so many times that they don't work real well." *Id.* He also reported that he has carpal tunnel syndrome. *Id.* He has trouble picking up glasses and cups of coffee. PageID 105.

Plaintiff testified that he had back surgeries in 1983 and 1992. PageID 90. He rated his pain at a four or five (out of ten), but stated that it reaches an eight or nine on bad days, which occurs three or four days a week. PageID 94, 100, 105. Plaintiff stated that he is most comfortable laying in his recliner with his feet up. PageID 95.

Plaintiff estimated that can walk 50 or 75 yards before stopping to relieve his pain. PageID 95. He estimated that he can stand for 15 to 20 minutes at a time, and he can sit for approximately 20 minutes at a time. PageID 96. He stated that he can lift 10-20 pounds on a good day, and acknowledged doing so causes pain. *Id.* He also stated that, on a bad day, lifting 10 pounds may be difficult, as he "can't carry a cube of Pepsi anymore." PageID 96-97, 102.

Regarding his ability to perform household chores, Plaintiff testified that he occasionally washes dishes, vacuums, and gardens, but is unable to mow the lawn. PageID 97-98. He visits his mother and sister in Fairborn two or three times per week. PageID 101.

### C. Vocational Expert Testimony

In addition to Plaintiff, a Vocational Expert ("VE"), Charlotta Ewers, testified at the administrative hearing. PageID 106-11. The VE classified Plaintiff's past work as a general operator at the heavy, semi-skilled level. PageID 107.

ALJ McNichols proposed a series of hypotheticals regarding Plaintiff's RFC to the VE. PageID 108-10. Based on Plaintiff's age, education, work experience, and RFC, the VE testified that Plaintiff could not perform his past work, but could nevertheless perform, in the regional

economy, 6,000 jobs at the light exertional level, and 3,800 jobs at the sedentary exertional level. *Id.* The VE additionally testified that all jobs at the light level would be eliminated if an individual was limited to lifting 10 pounds, with an alternate stand/sit opportunity, where the individual would not be able to stand more than three hours out of the eight-hour workday. PageID 111.

## II. APPLICABLE LAW

### A. Substantial Evidence Standard

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may
result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where

that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B.  "Disability" Defined

To be eligible for DIB, a claimant must be under a "disability" as defined by the Social Security Act.  42 U.S.C. § 423(d)(1)(A).  Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations.  20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001).  A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition.  *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. OPINION AND ANALYSIS[5]

On appeal, Plaintiff argues that ALJ McNichols improperly applied *Drummond v. Comm'r of Soc. Sec.,* 126 F.3d 837 (6th Cir. 1997), and failed to adequately weigh the opinion of treating physician Harry Fronista, M.D. Doc. 8 at PageID 482-89. Plaintiff also argues that ALJ McNichols improperly evaluated his pain and credibility. *Id*. at PageID 489-90.

A.   **ALJ McNichols Made No Error In Applying *Drummond*, Or In Weighing the Opinion of Dr. Fronista**

Plaintiff argues that, in light of the record demonstrating a worsening of his medical impairments between November 3, 2004 (the day after ALJ Spidel's November 2, 2004 decision) and March 31, 2006 (the date of his last insured status), ALJ McNichols committed reversible error under *Drummond* by adopting essentially the same RFC as ALJ Spidel. *Id*. Plaintiff's argues that ALJ McNichols should have found an even more restrictive RFC -- *i.e.*, a limitation to sedentary work, which would have yielded a finding of disability pursuant to the Medical-Vocational Guidelines (the "Grids"). *Id*.

 "Social Security claimants are bound by the principles of *res judicata*." *Drummond*, 126 F.3d at 841. In *Drummond*, the Sixth Circuit held that the Commissioner is bound by a prior ALJ's findings with regard to a claimant's disability application unless new evidence or changed circumstances require a different finding. *Id*. at 842; AR 98-4(6), 1998 SSR LEXIS 5, at *9, 1998 WL 283902, at *2-3. Moreover, Social Security Acquiescence Ruling 98-4(6), issued by the Commissioner following the Sixth Circuit's ruling in *Drummond*, mandates that:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the

---

[5]Plaintiff's pertinent medical records have been adequately summarized in his Statement of Errors and the administrative decision, *see* doc. 8 at PageID 476-81; PageID 64-70, and the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

> unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 SSR LEXIS 5 at *9, 1998 WL 283902, at *3.

It is the claimant's burden to present evidence showing that his or her symptoms have changed since the time of the Commissioner's prior determination obviating the application of the ruling in *Drummond*. *See Casey*, 987 F.2d at 1232-33. The Sixth Circuit has held that "when a plaintiff previously has been adjudicated not disabled, [he or] she must show that [his or] her condition *so worsened* in comparison to [his or] her earlier condition that [he or] she was unable to perform substantial gainful activity." *Id*. at 1232 (emphasis added). *See also McCracken v. Comm'r of Soc. Sec.*, No. 1:08-CV-327, 2009 WL 2983049, at *10 (S.D. Ohio Sept. 14, 2009) ("new and material evidence must document a *significant* change in the claimant's condition") (emphasis in original).

As applied here, the record supports ALJ McNichols' RFC determination. Even though Plaintiff underwent a triple-bypass operation in January 2006, there is an appreciable amount of evidence in the record supporting ALJ McNichols' finding that the "[RFC] for the reduced range of light work set forth above takes into account the location, duration, frequency, and intensity of the claimant's alleged symptoms, as well as precipitating and aggravating factors through the date of last insured of March 31, 2006." PageID 69.

ALJ McNichols noted that Plaintiff "received only conservative care for his alleged impairments following his surgery, and treatment notes from his cardiologist [George Broderick, M.D.] demonstrate that he did extremely well for a long period after surgery." *Id*. Indeed, the treatment notes of Dr. Broderick in 2005 -- approximately six months prior to the surgery -- document Plaintiff's "vague angina but only with maximal exertion," as well as occasional

shortness of breath and chest pain.  PageID 337-38, 340.  Most telling, however, are Dr. Broderick's treatment notes from the months following the bypass surgery.

For instance, on February 14, 2006, Dr. Broderick noted, "[Plaintiff] denies any episodes of lightheadedness, chest pain, or shortness of breath….He denies fever. He does not wish to participate in cardiac rehab.  He has been walking slowly on his treadmill at home and his states he is up and about doing some activities though he naps frequently."  PageID 336.  Similarly, on March 14, 2006, Dr. Broderick noted, "[Plaintiff] denied any chest pain, heaviness, shortness of breath, syncope, dizziness, palpitations or swelling….The cardiac exam revealed a normal PMI with a regular rate and rhythm, a normal S1 and S2 without murmur, rub or gallop….He has been doing quite well."  PageID 335.

On September 12, 2006, Dr. Broderick noted, "[Plaintiff] is doing well.  He gets a little short of breath in the evenings at rest, but this is only rare.  It does not bother him too much.  Overall, he is doing quite well, and he is in good spirits…..From a cardiovascular standpoint, things are going well since his [operation] back in January.  He will continue his usual medicines."  PageID 334.  On September 11, 2007, Dr. Broderick noted, "[Plaintiff] has overall been doing relatively well.  He gets rare chest pain and tightness but he doesn't use any nitroglycerin for it.  He has a little shortness of breath when he wakes up in the morning….At this point, he refuses further evaluation…."  PageID 333.

Dr. Broderick's notes are consistent with the March 6, 2006 report of Mohey Saleh, M.D., who performed the bypass operation.  *See* PageID 308. Dr. Saleh noted, "[p]ostoperatively, his hospital course was smooth and uneventful.  He was dismissed to home 12 days [after the surgery] on 2/4/06 in stable condition.  On his post-op follow-up visit, he is

doing extremely well without angina or failure. His incisions have healed nicely and his sternum is stable." PageID 309-10.

Although Plaintiff's bypass operation certainly constitutes a changed physical condition, Plaintiff has not met his burden of proving that his overall condition "so worsened" in comparison to his earlier condition at the time of ALJ Spidel's decision on November 2, 2004. *See Casey*, 987 F.2d at 1232-33. As such, and in light of the aforementioned treatment records, the Court finds ALJ McNichols' RFC determination to be supported by substantial evidence. Notably, the RFC accorded by ALJ McNichols is *more* restrictive than that determined by ALJ Spidel, as it includes additional limitations to jobs that do not involve climbing ladders, ropes or scaffolds or exposure to hazards or extreme hot, cold or humidity. PageID 66, 127. Moreover, ALJ McNichols adequately explained why Plaintiff's cardiac condition did not necessitate more restrictions than those included in his RFC finding. *See* PageID 67-70. Accordingly, Plaintiff's argument -- that ALJ McNichols misapplied *Drummond* -- is unmeritorious, as is his argument that a sedentary RFC should have been accorded.[6]

The Court also rejects Plaintiff's argument that Dr. Fronista's opinion was improperly weighed. Notably, in May 2009, Dr. Fronista completed interrogatories and a medical assessment of Plaintiff's ability to do work-related activities during the time period in question. PageID 440-54. In those submissions, Dr. Fronista opined that Plaintiff's lifting and carrying are affected by his impairments, and that he can only lift/carry 10 pounds for 2.5 to 5 hours during

---

[6]To the extent Plaintiff claims that ALJ McNichols misapplied *Drummond* to his other physical impairments (*e.g.*, low back impairment, Dupuytren's contracture, and carpal tunnel syndrome), such an argument is also without merit. ALJ McNichols correctly determined under *Drummond* and AR 98-4(6) that there was no evidence of a significant change in those conditions between the date of ALJ Spidel's decision and the date of last insured, and that the RFC determined by ALJ Spidel adequately accounts for the documented degree of severity of those conditions. *See* PageID 67-70. *See also McCracken*, 2009 WL 2983049, at *10.

the workday, and zero to 5 pounds for 2.5 up to 5 hours during the workday. PageID 440-41. Dr. Fronista additionally opined that Plaintiff is unable to standing, walk, or sit in his recliner for more than 2 hours without interruption on any single occasion during an 8-hour workday. PageID 441. Dr. Fronista concluded that Plaintiff is incapable of medium, light, or even sedentary work on a sustained basis, and noted on multiple occasions that Plaintiff is "unable to work" and "physically disabled." PageID 444, 449, 451.

While the medical opinions of treating physicians are generally entitled to greater weight than those of consulting physicians, a treating physician's conclusory statement -- that the claimant is disabled -- is not determinative of the ultimate issue. *Landsaw v. Sec'y of H.H.S.*, 803 F.2d 211, 213 (6th Cir. 1986). Rather, a treating physician's opinion is to be given controlling weight only if it is well-supported by medically acceptable clinical and laboratory techniques, and not inconsistent with the other evidence of record. *See* 20 C.F.R. § 404.1527(c)(2); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). An ALJ may properly reject a treating physician's opinion that does not meet these standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-31 (6th Cir. 1997). Such is the case with Dr. Fronista's opinion.

In addition to the previously-discussed treatment notes of Drs. Broderick and Saleh, Dr. Fronista's assessment is devoid of any detailed explanation, and is unsupported by his own treatment notes which do not reflect disabling impairments. *See* PageID 376-84. Although ALJ McNichols erroneously noted "[n]o physician reported that the claimant was disabled or more restricted [than] set forth above at any time relevant to the date last insured," *see* PageID 69, and appeared to discount Dr. Fronista's assessment -- in part, because it was issued more than three years after the expiration of Plaintiff's insured status, *see* PageID 70 -- such commentary is

harmless error.  ALJ McNichols gave good reasons for rejecting Dr. Fronista's opinion -- *i.e.*, that it is unsupported by objective evidence, and is inconsistent with the other evidence of record. *Accord Lane v. Astrue*, 839 F. Supp. 2d 952, 970-71 (S.D. Ohio 2011) (Newman, M.J.), *adopted by* 839 F. Supp. 2d 952, 955-56 (S.D. Ohio 2012) (Rose, J.) (finding the ALJ's decision -- to not afford controlling weight to the treating doctors' opinions -- supported by substantial evidence because the opinions were unsupported by the medical record).  In addition, the fact that Plaintiff went to the hospital in February 2007 and August 2008, *see* PageID 322-26, 399-404, and had a heart catheterization procedure performed in April 2009, *see* PageID 433-35, is not substantial evidence that Plaintiff was disabled as of March 31, 2006 -- his date of last insured.  In fact, the treatment notes from Plaintiff's February 2007 hospital visit -- where Plaintiff was admitted for "chest pain" -- state, "[s]ince being discharged from the hospital [in February 2006] he has not had any consistent chest pain.  Occasionally he has had a twinge that was not with any regularity that he reported that he has barely noticed." PageID 322-23.

While the record contains some evidence that supports Plaintiff's argument, under the substantial evidence standard, the Commissioner's non-disability finding is "not subject to reversal merely because substantial evidence exists in the record to support a different conclusion." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1996)).  It is the Commissioner's function to resolve conflicts in the evidence, *see Hardaway v. Sec'y of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987), and that is exactly what the ALJ reasonably did here.  Accordingly, because ALJ McNichols' decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. §405(g); *Richardson*, 402 U.S. at 401.

> **B.     ALJ McNichols Did Not Err In Considering Plaintiff's Pain, Or Assessing His Credibility**

The last page of Plaintiff's Statement of Errors is devoted to summarily arguing that ALJ McNichols improperly evaluated Plaintiff's allegations of pain, as well as his credibility. *See* doc. 8 at PageID 489. The Court has fully considered these arguments, but finds neither to be meritorious.

Plaintiff cites no evidence in the record indicating his pain to be greater than that determined by ALJ McNichols. Moreover, Plaintiff does not provide any evidence that his level of pain has "so worsened" since ALJ Spidel's November 2, 2004 decision, which would warrant reconsideration under *Drummond* or AR 98-4(6). *See Casey*, 987 F.2d at 1232-33. *See also McCracken*, 2009 WL 2983049, at *10.

Regarding Plaintiff's credibility, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." PageID 67. Such a finding is supported by substantial evidence.

An ALJ's credibility findings are entitled to considerable deference and should not be lightly discarded. *Casey*, 987 F.2d at 1234. The Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [a claimant] are reasonable and supported by substantial evidence in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (brackets added). The Sixth Circuit has held that it accords great deference to an ALJ's credibility assessment, particularly because the ALJ has the opportunity to observe the demeanor of the claimant while he or she testifies at the administrative hearing. *Id.* Moreover, the Court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Here, Plaintiff has failed to provide a "compelling reason" to disturb the ALJ's credibility finding. *See id*. Contrary to Plaintiff's contentions, substantial evidence -- including the evidence of record discussed *supra* -- supports the ALJ's credibility determination.

## IV. RECOMMENDATION

For the foregoing reasons, the Court finds all of Plaintiff's assignments of error to be unmeritorious, and further finds ALJ McNichols' non-disability determination supported by substantial evidence.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be found supported by substantial evidence, and **AFFIRMED**; and

2. This case be **CLOSED** on the docket of this Court.

August 1, 2013                                       **s/Michael J. Newman**
                                                     United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).